AXTMAYER, PETITIONER AND APPELLEE, *v.* KESSINGER,
RESPONDENT AND APPELLANT.

APPEAL from the First District Court, of San Juan in
Mandamus Proceedings.

No. 3107.—Decided March 26, 1924.

MANDAMUS—PREVIOUS DEMAND.—It appearing that although the petitioner did
not personally demand of the public official sought to be coerced by man-
damus the performance of the act which the petitioner alleges he should
have performed, such a demand was made by the other party with whom
the petitioner contracted, it can not be held that the petition is insufficient
or contrary to the jurisprudence laid down by this Court in *Zavala et al.* v.
*Executive Council,* 9 P. R. R. 191, *Morales* v. *Wilson et al.,* 16 P. R. R. 714,
and other cases.

ID.—AUDITOR OF PORTO RICO—GOVERNOR—APPEAL FROM DECISIONS OF AUDITOR—
ACTION AFTER GOVERNOR'S DECISION—REMEDY.—Under section 21 of the
Organic Act any person aggrieved in the settlement of his account or claim
may appeal to the Governor, and he can resort to the courts only after the
administrative remedies are exhausted. On the facts of this case it was held
that as the Board of Trustees appealed to the Governor, the administrative
remedies might be considered exhausted and, therefore, that the petitioner
could bring his case into court and his action could not be considered as a
collateral attack, but as the direct attack referred to in the said section of
the Organic Act in the following words: ''The decision of the Governor in
such case shall be final, subject to such right of action as may be otherwise
provided by law.''

ID.—UNIVERSITY OF PORTO RICO—BOARD OF TRUSTEES—APPOINTMENT OF TEACH-
ERS—SALARIES OF TEACHERS—AUDITOR OF PORTO RICO.—In accordance with
the statute the Board of Trustees of the University of Porto Rico shall
appoint the teachers in the University and fix their salaries, and when a
teacher has been duly appointed by the Board and all of the necessary docu-
ments concerning the appointment are sent to the Auditor of Porto Rico it
is his unavoidable duty to act in the manner prescribed by law and the
regulations in order that the salary fixed by the Board may be paid to the
teacher, and if he refuses to do so he may be compelled by mandamus.

The facts are stated in the opinion.

*The Attorney General* and *Messrs. L. Samalea* and *C.
Llauger Díaz* for the apellant.

*Mr. J. Valdejulli* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the
court.

The petitioner is the principal of the High School of
the University of Porto Rico. The respondent is the Auditor
of Porto Rico. The petition is for a writ of mandamus.

The University of Porto Rico was established by an Act of March 12, 1903. It is governed by a Board of Trustees and supported by the Insular Government, receiving aid also from the Federal Government in accordance with certain special laws. Section 7 of the Act reads in part as follows: "The Board shall have power to enact ordinances, by-laws and regulations for the government of the University; to fix, increase and reduce the number of professors, teachers and other employees of the University, appoint or remove the same, determine the amount of their salaries and to prescribe their duties, * * *."

In the exercise of these powers the Board of Trustees created the position of principal of the high school, appointed Joseph H. Axtmayer, the petitioner, to that position and assigned to him a salary of $2,500 for the school year 1922–23. Axtmayer accepted the appointment and took charge of the office. On September 23, 1922, in accordance with the budget approved by the Board of Trustees, a pay-roll was sent to the Auditor and the petitioner appeared therein as having earned the sum of $250 as salary for the said month of September. The Auditor refused to approve, sign and despatch the said pay-roll on the ground that Axtmayer's salary for the school year 1922–23 should remain the same as it had been for the year 1921–22, or $2,250.

Axtmayer instituted this mandamus proceeding and his petition was sustained, whereupon the Auditor appealed to the Supreme Court. In his brief five errors are assigned, as follows:

"I. The court erred in not holding that the petition did not adduce facts sufficient to constitute a cause of action.

"II. The court erred in not holding that the petitioner had a speedy, adequate and effective remedy in law.

"III. The court erred in not holding that the Governor's decision was final in so far as the respondent is concerned, unless it was shown to have been annulled by the Governor himself or by a competent court.

"IV. The court erred in not holding that as the Governor's final action had not been revoked a petition for a writ of mandamus against the Auditor was not the proper remedy, inasmuch as the Governor's decision could not be attacked collaterally in mandamus proceedings against the Auditor.

"V. The court erred in not holding that the evidence was not sufficient to warrant the issuance of a writ of mandamus."

1. Let us examine the first assignment. The appellant maintains that because it is not alleged in the petition that the Auditor was first requested to do what the petitioner seeks to compel him to do the petition is insufficient, in accordance with the jurisprudence of the Supreme Court in the cases of *Zavala et al.* v. *Executive Council,* 9 P. R. R. 191, *Morales* v. *Wilson et al.,* 16 P. R. R. 714, and others.

It is true that in those cases it was held that "before any application for a mandamus can be considered, the defendant must be requested to perform the act sought to be compelled, and must have refused so to do." But we agree entirely with the appellee that the petition shows compliance with the requirement of the jurisprudence. Payment was demanded by the Board of Trustees and the refusal of the Auditor was definite. It was not necessary that Axtmayer should repeat the action of the board.

2. The next three assignments may be considered together. Section 20 of the Organic Act of Porto Rico reads in part as follows:

"That there shall be appointed by the President an auditor, * * * who shall examine, audit, and settle all accounts pertaining to the revenues and receipts, from whatever source of the government of Porto Rico * * *; and audit, in accordance with law and administrative regulations, all expenditures of funds or property pertaining to * * * the government * * *. He shall keep the general accounts of the government and preserve the vouchers pertaining thereto. * * * The decisions of the auditor shall be final, except that appeal therefrom may be taken by the party aggrieved or the head of the department concerned within one year, in the manner hereinafter prescribed. The auditor

shall, except as hereinafter provided, have like authority as that conferred by the law upon the several auditors of the United States and the Comptroller of the United States Treasury, and is authorized to communicate directly with any person having claims before him for settlement, or with any department, officer, or person having official relations with his office. * * * ''

''Section 21.—That any person aggrieved by the action or decision of the auditor in the settlement of his account, or claim may, within one year, take an appeal in writing to the Governor, which appeal shall specifically set forth the particular action of the auditor to which exception is taken, with the reason and authorities relied on for reversing such decision. The decision of the Governor in such case shall be final, subject to such right of action as may be otherwise provided by law.''

The appellant agrees that as the petitioner's claim was rejected, the law gave him a clear and adequate remedy in administrative proceedings, but that he did not avail himself of the remedy and is, therefore, estopped from resorting to the courts. The appellee contends that his case is not covered by said section 21, because the Auditor had nothing to settle, it being a matter of the payment of a salary fixed by a board having authority to do so and his only duty being to ascertain whether the salary had been fixed and whether the calculation was well made. Neither party has cited any jurisprudence construing statutes equal or similar to those of the Organic Act of Porto Rico.

The question has been considered carefully by the court. For the reason that in the original English text of the law the word ''settlement'' is used and this word has a very broad meaning, we are inclined to hold that an appeal could and should have been taken to the Governor from the Auditor's decision.

This, in accordance with the general rule that the administrative remedies should be exhausted before resorting to the courts, would dispose of the appeal if it did not appear from the record that although the petitioner himself did not appeal to the Governor, an appeal was taken

by the party with whom he contracted (the Board of Trustees) and the final decision of the Auditor followed the opinion held by the Governor. The administrative remedies were in fact exhausted; therefore, the second assignment of error is without merit.

Section 21 of the Organic Act prescribes that the decision of the Governor in such case shall be final, subject to such right of action as may be otherwise provided by law. The appellant does not suggest what this right of action to which the law refers may be, but contends that if it be held that the case was decided by the Governor, then his decision cannot be attacked collaterally.

Is this proceeding a collateral attack upon the Governor's decision?

The record shows that between the Board of Trustees and the Auditor there was a difference of opinion concerning the interpretation of section 2 of Act No. 40 of 1921 which reduced the salaries of public officers. The Auditor was of the opinion that the measure applied to the teachers of the University. The Board believed that it did not. The record contains a lengthy opinion of the Attorney General in support of the opinion of the Board. Notwithstanding this, the Auditor was firm in his opinion and the Board appealed to the Governor, who, on August 18, 1922, decided that the salaries for the year 1922–23 should be the same as they had been for the year 1921–22 and the Auditor adjusted his action to that decision. The Board was not convinced and on September 23, 1922, sent in the pay-roll referred to previously in this opinion. It seems proper to transcribe the following paragraph from the letter which the president of the Board sent with the pay-roll. It is as follows:

"Since you have verbally stated that there is no doubt in your mind that the Board of Trustees legally has the power to fix salaries and since the Governor, while refusing to modify the wording of

his letter consenting that salaries remain as they were last year, made the verbal statement to you in my presence that you might proceed to pay the salaries contracted by the Board of Trustees, I believe that you will concede this last disputed point in regard to the payment of salaries and approve these pay-rolls.''

Leaving out of consideration the Governor's verbal reversal of his decision, inasmuch as it was not duly established, and admitting that the Auditor finally adjusted his action to that decision, we are of the opinion that this petition for a writ of mandamus is not a collateral attack and may be considered as the right of action to which section 21 of the Organic Act refers.

In the case of *State* v. *Kenney,* 26 Pac. 197, the following was held:

''Act Mont. March 14, 1889, which fixes the compensation of the Code commissioners at $4,000 each, and which provides that on filing any one of the completed Codes with the secretary of the territory the auditor shall draw his warrant for the *pro rata* salaries of the commissioner's, constitutes an appropriation of the money required for the compensation of the commissioners, and *mandamus* will issue to the state auditor to compel him to draw his warrant in favor of the commissioners who have performed their duties as prescribed by the act.''

In the case of *State ex rel. Brainerd* v. *Grimes, State Auditor,* 34 Pac. 833, the opinion of the court concludes as follows:

''The appropriation by law then having been made, and the relator being in all respects entitled to the amount asked for, the demurrer is overruled, and the peremptory writ of mandamus will issue.''

The Oregon case of *Burch* v. *Earhart* may also be cited as an authority. The facts as stated in the opinion by Chief Justice Kelly were as follows:

''By an act, approved October 20, 1876, making appropriations for the expenses of the state government, the sum of forty thousand

dollars was appropriated for the general expenses of the penitentiary. It seems to have been insufficient to defray the salaries and other expenses of that institution for the two years commencing on the second Monday of the year 1876, and that there was left a deficiency of nine thousand five hundred and seventy-four dollars and ten cents.

"An act entitled 'An act to provide for the ordinary expenses of the state government, and general and specific appropriations,' was approved October 19, 1878, which appropriated funds for the ordinary expenses of the state government and also the following item: 'Penitentiary fund: for deficiencies in excess of past appropriations, nine thousand five hundred and seventy-four dollars and ten cents.'

"The appellant was the superintendent of the penitentiary and, as such, became entitled to four hundred and fifty dollars, as a salary for the quarter ending August 31, 1878; but, owing to the deficiency before referred to, it was not paid when it became due. On the twenty-first day of October, 1878, he applied to the respondent as secretary of state, and requested that, as auditor of public accounts, he should audit the claim and issue a warrant on the state treasurer for the payment of the four hundred and fifty dollars above referred to. For the reasons heretofore stated, the respondent refused to do so. The appellant then applied to the judge of the circuit court for Marion county for a writ of mandamus commanding respondent to audit his claim and issue a warrant for the amount due, or show cause why he refused to do so.

"The respondent answered the writ and gave reasons for refusing to audit and allow the claim, which are substantially as follows: That the appropriation of forty thousand dollars for the general expenses of the penitentiary, made by the act approved October 20, 1876, was exhausted before the time when appellant's claim was presented to him; that warrants had already been drawn upon that fund to the full amount of the forty thousand dollars; that appellant's claim is an expense in excess of the income of the state for the fiscal year ending September 9, 1878, and that no law was passed by the legislative assembly levying a tax to pay such deficiency. The appellant filed a general demurrer to the answer, which was overruled by the circuit court, and failing to further plead, the writ was dismissed. From this decision an appeal was taken." *Burch* v. *Earhart,* 7 Oregon, 64-65.

The court goes on to consider carefully the questions involved and the opinion concludes as follows:

"An appropriation having been made to pay the claim of appellant we hold that it is the duty of respondent to audit that demand and draw his warrant on the treasurer for the amount found to be due. The judgment is reversed and a peremptory mandamus ordered to be issued." *Burch* v. *Earhart*, 7 Oregon, 67-68.

The case being open to judicial investigation and decision, should the judgment of the district court be affirmed or reversed?

The power of the Board of Trustees is so clear that the attitude of the Auditor is inconceivable. His original position based on the interpretation of section 2 of the Appropriations Act of 1921 providing for the reduction of salaries might be explained, but his final decision following the so-called ruling of the Governor is absolutely untenable.

The Legislature appropriated the lump sum of $120,000 (Acts of 1921, p. 243) for the support of the University and the Board of Trustees made a budget fixing the salaries of the teachers. In accordance with that budget the Board contracted with the petitioner and under the contract prepared the pay-roll and sent it to the Auditor. The duty of the Auditor to issue the necessary documents to authorize the payment is manifest and unavoidable. The issuance of the writ of mandamus was properly adjudged.

3. With regard to the last assignment, it will suffice to say that we have examined the evidence and find that all of the material allegations of the petition were proved.

The judgment appealed from must be

*Affirmed.*

Justices Hutchison and Franco Soto concurred.
Justices Wolf and Aldrey dissented.

### DISSENTING OPINION OF MR. JUSTICE WOLF.

The majority opinion substantially concedes, if it does not assert, that the complainant should have exhausted his

administrative remedies by appealing to the Governor. This the complainant did not do and where an appeal is given, the appeal must be taken. However just the claim of complainant may be shown to be, he did not appeal. The alleged fact that somebody else did appeal did not make the latter appeal an act of the petitioner. The mandamus should have been denied.